Thank you, Your Honor. May it please the Court, Kyle French for the United States. And I respectfully request that you reserve a few minutes at the end. I'll try to remind you, but you can watch the clock yourself. Yes, Judge. If you see it get down near that two minutes, try to stop. Understood. In deciding an issue that this Court has never examined or considered, or any circuit court in the country, the District Court decided an issue which affects not just the Coast Guard, but also the Navy and the Marines and their daily operations, both in wartime and in peacetime. And the District Court, in doing so, though, misapplied the law. One thing that's unusual about this decision is the basis for the extraordinary relief given. It's actually somewhat difficult to discern from the opinion. You have the judgment of dismissal stating it is based on double jeopardy. And yet, in the opinion, you don't have double jeopardy analysis. You don't have the judge pointing out that, in fact, the record's clear, that if Mr. Stoltz had the opportunity to elect punishment by court-martial, he still would not have been court-martialed. And that reason is the decision had been made to defer to the federal prosecutors for this particular crime in moving forward with an indictment. Not only that, but if you look at the facts in terms of double jeopardy, the elements between what was charged here in the military, Article 134, and the elements of what was pending before the lower court, which is Title 18, child pornography and possession, they're dramatically different in terms of there's no mental state required whatsoever for Article 134. It's a preponderance of the evidence standard. It focuses on prejudicial conduct that is prejudiced to the good order of the military unit and conduct of the unit. The military punishment isn't a criminal procedure, correct? Correct, Your Honor. This court decided in Revell, which actually was decided after this case was initiated. So as part of the lower court's ruling, the lower court adopted the magistrate's recommendation that it was non-criminal, and that was decided actually before Revell. But Revell has put that to rest, that non-judicial punishment is non-criminal, and that is not an issue before the court. If he had been counsel, if he had been court-martialed, however, that would have been a criminal proceeding. Yes, Your Honor, but double jeopardy absolutely would not have applied, because if Mr. Stoltz was court-martialed for Article 134, you would look at the Blockberger test and think, you know, even if he had elected court-martial, even if he was court-martialed, it would be an Article 134 court-martial. That was a charge. And, again, you would do the Blockberger comparison and note that there simply is no double jeopardy here. They're very different crimes. The elements are very different. As I mentioned, the evidence is different. Even the definition of child pornography, the 134 charge from Mr. Stoltz was viewing something that appears to be child pornography. That certainly is very different from the Federal standard when it comes to defining child pornography and what constitutes child pornography. So other than double jeopardy, what could be going on here as a basis for the decision? And one possibility is due process, that perhaps Judge Holland is really grounding in due process. After all, double jeopardy only appears in a judgment for dismissal, and in the order itself it's only talked about as the title of defendant's motion. It's not talked about otherwise. So maybe it's due process, but even if we look at due process and the standard that's required for due process violation, and here remember we're dealing with an election that is not constitutional-based. It's created by Congress. The conduct of the Coast Guard here, if they improperly did not give Mr. Stoltz a chance to elect Coast Guard, was not so outrageous as to rise to the level of the cases that this court has cited as a basis for finding a due process violation. The Coast Guard acted in good faith. They acted in good faith in coordinating with the U.S. Attorney's Office early on. Now when the materials were initially removed from the ship, there needed to be some forensics done. There was some time done to that to verify what's on it. It's not as if Commander Williams testified that upon execution of the search warrant, he looked at those materials to determine what was on there. Rather, they needed to be analyzed forensically by an expert, and they were by Homeland Security. That took a little bit of time. Now as time lapsed, it got to the point where- Counsel? Counsel? Yes, Your Honor. Just to focus your argument a bit, if you say there was no due process violation in the non-judicial proceeding aspect, let's suppose that there had been a violation of the statute or even a due process violation. Did Mr. Stoltz did, and does he have a remedy within the military process to get relief for that? Yes, he does, Your Honor. He has not only a remedy for relief within the military process, but also within the civilian legal process. So his first form of relief could be to appeal the decision of the commander, if he felt it was a due process violation, to higher authorities within the military. He had that opportunity to do so within a short period of time, and he elected not to. But beyond that, he also has civilian recourse, in terms of availing himself of the federal court system by first going to the Board of Corrections and telling them there was a due process violation here. I want my back pay, potential reinstatement, return of any taken away benefits. And if the Board disagrees with him, he could file under the Administrative Act a proceeding before the federal court. And, Your Honor, in terms of the cases that had been brought before district courts dealing with the vessel exception, such as Bennett in Hawaii, they involve people who are appealing the Board of Corrections decisions. So Bennett is an excellent case, I think, to look to in terms of the facts in looking at the application of vessel exception. Because if the court looks at the application of vessel exception and determines it did apply to Mr. Stoltz, then the court need not consider the case further in terms of the remedies and relief. Because then the Coast Guard acted correctly in deciding that the vessel exception applied and their reliance upon it in imposing the nonjudicial punishment. But the lower court found the vessel exception did not apply for two reasons. The Alex Haley was not a vessel on the date of the nonjudicial punishment, on May 6, 2009, and that Mr. Stoltz was not attached to the Alex Haley. And by the plain language of the statute, it's an individual who either is attached or embarked on a vessel. The exception that Congress has built into Article 15 due to particular operational needs of specific armed forces. So, for example, the Air Force and the Army have not opted into being able to avail themselves or service members of that exception. It is strictly a Marine, Navy, and Coast Guard exception due to the nature of their operations. If he, counsel, had pursued relief before the Board of Correction, would they have the jurisdiction to determine whether, A, it was a vessel, and, B, whether he was attached to it? Yes, Your Honor. I think from the cases cited, there's at least two or three cases in which that was done where individuals had lost to the Board. I believe Pearsall's an example where the executive officer of a nuclear submarine had run into a Korean fishing vessel and sank it. He was punished by nonjudicial punishment, and he went before the Board. And part of his argument was, I was not attached to the vessel, so they should have given me an election to choose restrict punishment by court-martial. The Board rejected that, as did the district court that decided Pearsall rejected that. Bennett is a good case because there also you have an examination within this district of the vessel exception. And in terms of time period in Bennett, he had five individual defendants who were involved in using marijuana on board a submarine. Punishment for one of them, in terms of nonjudicial punishment, didn't come until ten months after the act. And the other defendants also similarly were long periods of time. One thing to note in terms of time period in which to bring nonjudicial punishment against a service member, the statute of limitations in the manual for court-martial is two years. So it's not as if Congress looked at nonjudicial punishment and said with Mr. Stoltz, for example, on a ship, you must impose it now on the ship that you found this child pornography without doing any forensic analysis, without interviewing Stoltz. So it's a situation where there are cases before you that have been decided where long periods of time lapse. But what's interesting here, unlike Bennett, is once the decision had been made for nonjudicial punishment, it occurred within a matter of days, according to the record. Because what happened here is the commander of the vessel, as well as the XL Williams, Commander Williams, wanted to court-martial Mr. Stoltz. They went, as the record indicates, to senior authorities in the Coast Guard to get permission to court-martial him. And he was told, no, you cannot court-martial him because the federal people are taking this case. However, time lapsed, and Mr. Stoltz was about to get out of the military. And you had a situation here in terms of the good conduct and efficiency of the crew, et cetera, that no punishment had been imposed to date. And this is an act that was witnessed by a fellow crew member of Mr. Stoltz. So it's not as if the ship didn't know what occurred here. So the commander decided that he wanted some type of punishment for conduct purposes to be imposed against Mr. Stoltz before he left. So he went back and asked again, can I do nonjudicial punishment for Article 134? And he got permission, and that proceeded on an expedited basis within a number of days. One thing about the vessel. You may want to save your time for a rebuttal. I think unless Your Honor has any questions at this point, I certainly will. That's fine. May it please the Court, Eric Lempel on behalf of Christopher Stoltz, the appellee in the case. Initially, I'd like to point out that I believe that the issues before us are essentially factual ones, whether the Alex Haley was a vessel and whether Petty Officer Stoltz was attached to the vessel at the time of the NJP. If that's the case, they're essentially factual. It's a clear error of standard for this Court to review. Let's just assume for a moment that the vessel exception doesn't apply here. Why should you still prevail? Where's the criminal punishment for the double jeopardy purposes? If the vessel exception does apply, rather. I'm sorry. Yeah. Well, if the vessel exception, if it was an operational seagoing vessel and that exception applied to Article 15 and that Mr. Stoltz was attached to that vessel at the time of the NJP, then he would not have this, we would not be here. He'd have no right to demand a court-martial. If the vessel exception applied. I'm concerned about the opposite question, which I thought was what Judge Fischer was raising and maybe Judge Peysen did, is assuming that the vessel exception does not apply and that he definitely had a right in the 134 proceeding to be told, you can seek a court-martial instead of taking this. Why does that create a double jeopardy bar here when the 134 proceeding is not a criminal proceeding? Well, it doesn't necessarily create a double jeopardy bar. It is a violation of the statutory right to make a knowing, intelligent. So why is the remedy of that dismissal of the criminal charge, which is what happened here? So, for example, if there was a violation, presumably he could appeal the fine, get it back, cancel the punishment, correct his record. There might have been a way to do that. There might still be a way to do that, but what does all that have to do with whether the government can bring a criminal case? Well, I don't think he can go back and get the time that he was punished back. Those are not options that are available for this type of violation. That's what the district court found. That's what the district court in Crank recently found as well, that you can't have this type of agreement between the U.S. Attorney's Office and in the Crank case it was the Marines to effectively punish them at the military level and then punish them again in the civilian courts. That case was a DUI case, so it was a minor offense of DUI. And because the punishments were already served in the Crank case and the punishment was already served by Mr. Stoltz in this case, he can't go back and undo that punishment. But it's not criminal punishment. Well, yes, it's not time in prison. It's not criminal at all. I'm sorry? It's not criminal. I don't understand where your double jeopardy problem is. He got a captain's mask. Let's assume he was entitled to be notified that he had the option of insisting or asking for a court-martial. That was denied him, so he went ahead. But what he got was, in fact, a nonjudicial proceeding. That punishment is not a criminal punishment. The remedy that the district court, as I understand, invoked in this case, was to dismiss a criminal indictment on double jeopardy grounds. I don't see it. Well, the order doesn't say double jeopardy grounds. It says that his statutory right to make a knowing, intelligent, and voluntary waiver of his right to court-martial was violated. What's the best case that then supports the idea that he should – that this criminal prosecution should be dismissed? Well, I think if you look at – What's the authority? If you look at – even though Persall came to the court and Persall came to the opposite conclusion, i.e., that Mr. Persall, the NJP, was appropriate because the ship in question was a vessel. The language in that case make it clear that the factors don't apply to the Alex Haley and the Stoltz matter. So it would have – Stoltz – Persall would have had his military record corrected had the ship been found to be – to not be a vessel within the meaning of Article 15. So you can't give – there really isn't – I don't see where the violation equals dismissal of a criminal indictment. There's no allegation of bad faith here, is there? Well, why is there a seven-month delay? NJPs are normally handled in two to three weeks. That's the testimony in this case. What's the test for – what's it called? Outrageous government conduct? Well, in this case, the alleged crime took place or the bad act took place October 7th of 2008. The testimony in the case was that Lieutenant Commander Williams talked to the U.S. Attorney's Office and to the attorneys in the Coast Guard Legal Unit and determined that even though we want to court-martial Petty Officer Stoltz for these offenses, we shouldn't do that. That's what the U.S. Attorney said because we want a chance to punish him in the civilian court. So if they had – and this occurred when the ship was moored in Kodiak. It set out right after that. He could have been NJP'd at that point, and we wouldn't have had an argument. They then wait seven months to decide what to do, and the only reason that they decided to do this NJP after he was not attached to the vessel for some period of time – in fact, he was under the command of the shore unit and he lived ashore, his belongings were ashore – was they didn't want him to get out with an honorable discharge. So they did this NJP so that he could be punished, and two years later the case is filed in Alaska civilian court. So it looks like there's some – perhaps collusion is not the right word, but collaboration in not effectuating swift, efficient punishment, which is the whole reason for an NJP aboard a Navy, Marine, or Coast Guard vessel is to maintain discipline aboard the ship so that the crew members know things are being handled in a swift, efficient fashion. That's why you don't have to offer a court martial knowing intelligent and voluntary waiver of your right to court martial because the exigencies of being a seagoing or about to be seagoing vessel are there. None of that happened in Stoltz. That cutter was from January, beginning of January through the end of May 2009, was moored, undergoing major overhaul. No question about that. There's no reason that there couldn't have been a court martial, at least the offer and the knowing intelligent waiver, and because of that Stoltz was prejudiced. Okay, now I'm still trying to sort out the confusion here about whether double jeopardy is involved in this or not. Judge Holland's order winds up, I'm looking at ER 6, and based on all of the relevant factors the court concludes the defendant was not attached to a vessel at the time of his NJP, thus the vessel exception did not apply, and defendant should have been given the opportunity to request a trial by court martial. Because he was not afforded this opportunity, he cannot be deemed to have waived his right to trial by court martial, and without a valid waiver the government's prosecution cannot proceed. Now, what's the legal basis for that? He's not entitled to a court martial. He can request it, but the service doesn't have to court martial him, does it? No, but that's not the evidence before the court. That's the position of the United States, is that the Coast Guard would not have court martialed him. There's no evidence that that's true. But it says, Judge Holland said, he cannot be deemed to have waived his right to trial by a court martial. So is your theory that before the civilian courts can, through a criminal process, bring a court martial, a criminal charge against the sailor, that he has to be given the opportunity to shift it into the military context? Yes, and I disagree with the initial statement. I think he does, under Article 15, service members have a right. That changed in 1962. It applies to all of the armed services. They have a right to court martial except when the vessel exception comes into play. It's a right. It's a statutory right. Then how do you respond to Mr. French's argument that even if he had been court martialed, that it would not create a double jeopardy from civilian prosecution under the Blockburger test? Blockburger doesn't apply, and that's an incorrect argument. 134, what Mr. French is arguing is that there's a chance that Petty Officer Stoltz would have been prosecuted under Sections 1 and 2 of 134. In reality, all the elements of Section 3 of 134 that are analogous to the federal civilian child pornography statute would, in all likelihood, would have been prosecuted at court martial had they told Mr. Stoltz he had a right to the court martial, given him an attorney that properly advised him so he made a knowing, intelligent, voluntary waiver of that right or not. So the charges would have been the same. So it's a facade to say, well, because we only put down 134.1 and 2, they're different, and there's some different elements in those sections. All of the elements of 134.3 are there. He certainly, if they had gone to court martial, he certainly would have been prosecuted under 134.3, and it would have been the exact same set of factors that he would have been potentially tried on in this civilian case. So I don't think that that argument applies. If that argument does not apply, Blockburger is irrelevant. Okay, thank you, Mr. Larson. You know, you never really did answer Judge Fisher's question, which was what's the legal basis on which Judge Holland relied? Is it the Sixth Amendment, the Fifth Amendment, a statute that allows for dismissal? I believe the Fifth and Sixth Amendment challenges and the statutory right that a service member has to do that. So it's all of the above? It's all of the above. Did I answer that somewhat sufficiently, Judge Fisher? I'll ponder it and find out and let you know. Okay, thank you very much. Thank you. Thank you, Mr. Lempel. Okay, Mr. French, you reserved some time. Thank you, Your Honor. I'll be brief. One thing that's very important is what is the standard of review here? The defense counsel, I believe, was incorrect when he said that the court is looking at this case in terms of clearly erroneous standard, when, in fact, the application of the vessel exception is going to be reviewed de novo, as well as the application of whether it's due process or double jeopardy to the fact sheet. That is a de novo review. The factual findings of the court are reviewed under clearly erroneous standard. But what you have here, I thought back initially to argue from the outset that the judge made a lot of errors in finding fact. But if you look at the record, the facts he cite are correct, but often they are of a different time frame. The relevant time frame is May 6th when the nonjudicial punishment occurred, not the state of the condition during the course of the construction-related activities and such, in which it may or may not have been a vessel. The key is the May 6th date. So findings of fact, such as reliance on the Charlie status, especially, is without precedent. And Charlie status is a default status for all the cutters in port. It doesn't indicate whether or not it's capable of being transported on water, as Congress has defined vessel. So the factual findings are- Counsel, we got the fact there, sir. I want to, while it's still fresh in our minds, the last point that counsel made, based on what I read from Judge Holland's order, if we disagree with you and conclude that he was not attached to a vessel as Judge Holland, which is what Judge Holland found, is Judge Holland correct, if that's the state of play, is he correct that he had the right, the statutory right, to request a court-martial, and having been denied that right, civilian courts, you can't bring a criminal action in the civilian courts since he has not waived that right. Is that a true state of the law? No, Your Honor. A service member has a right to elect the form of punishment when the vessel exception does not apply. He can tell his commanders, I will not accept punishment by nonjudicial punishment. The only way you can punish me is by court-martial. That's what Article 15 is. But in this instance-  Correct, Your Honor. A defendant, a service member, can't force a court-martial. As cited in my brief, the manual for court-martial says only the commander can initiate the decision for a court-martial to occur. So it's not as if Mr. Stoltz- Okay, so the co-sueur in this case says, you've exercised your right, we're not going to court-martial you. So we're not going to do that, and they don't do anything. Okay, so now is he subject to the civilian courts? Yes. Yes, if he was not court-martialed, did not receive nonjudicial punishment, I can't think of a due process violation or any other basis which would support Judge Holland's order to dismiss with prejudice. Okay, so but instead, they didn't do nothing. What they did was actually do the nonjudicial punishment. And so does that change the equation at all? The fact that he didn't get the form within the military that he had the right to ask for? No, Your Honor, because the relief for that failure to give him an option, if Your Honor were to find he was not attached, there is relief available. The relief available, though, isn't couched in terms of due process rights. We're dealing with a non-criminal form of punishment in a waiver that is not constitutional in nature. It is statutorily created by Congress as special option. What's interesting here is that so if it would have gone ahead, we still could go ahead and go forward with the civilian prosecution. What's interesting here and what I think has occurred is Judge Holland looked to crank Espinosa at the time, and he saw the relief given there, and this case he attempted to fit into that relief. And the relief granted in crank, the court said in Espinosa, that is not a due process case. It is a double jeopardy case. I'm sorry, but your time has expired, so I have to ask you to close the argument. Certainly, Judge. I'll leave any remaining time for any further questions the Court has. Does Judge Fischer? No further questions. Judge Pais, any questions? No. I guess we have no questions. Thank you. I'm going to thank Mr. French and Mr. Lempel for excellent arguments on both sides of the difficult issue. It's a very interesting case.
judges: Fisher, Gould, Paez